UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JEFFERY MCCLOUD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:21-cv-00429-JPH-MKK |
| ) | |
| VANSCHOYCK, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Jeffery McCloud, who is currently incarcerated at Wabash Valley Correctional Facility ("WVCF"), alleges in this civil rights action that the defendants violated his Eighth Amendment rights by spraying him with OC spray and refusing to allow him to rinse it off, causing him to experience pain and suffering. The defendants seek summary judgment on Mr. McCloud's claims. For the reasons below, those motions are **GRANTED IN PART AND DENIED IN PART**.

## I.
## Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the

1

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Factual Background

Because the defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

On November 20, 2020, Mr. McCloud was lying in bed in his general population cell while defendants Officers Pickett and Holt were collecting breakfast trays. Dkt. 57-1 at 46:16-17 (McCloud Dep.). Officer Pickett attempted to close the cuff port[1] of the cell Mr. McCloud shared with Thomas Cox, but Mr. Cox prevented him from doing so by holding the cuff port. *Id.* at 16:17-18. Officer Pickett briefly argued with Mr. Cox and called Sgt. Vanschoyck for assistance. *Id.* at 42:15-16, 43:8-10.

A few minutes later, Sgt. Vanschoyck arrived and started spraying OC spray into the cell without warning. *Id.* at 45:1-46:14; at 53:23-25; dkt. 69 ¶ 5 (McCloud Aff.). Mr. Cox then closed the cuff port. Dkt. 57-1 at 44:4-6; dkt. 52-5. OC spray reached Mr. McCloud, who was in his bunk about ten feet away from the cuff port. Dkt. 69 ¶ 7. The OC spray caused Mr. McCloud to jump out of bed. Dkt. 57-1 at 42:20-25. The spray got all over Mr. McCloud, the smell caused him to gag, his nose ran, his eyes teared up, *id.* at 45:19-46:2, 61:6-11, his skin and lungs felt like they were burning, *id.* at 27:1-7; dkt. 69 ¶ 16, and he had

---

[1] The parties use the terms "cuff port" and "cup port" interchangeably when referring to this device. For clarity's sake the Court will refer to it as the "cuff port." The Court understands the cuff port to be a small opening in the cell door through which food can be passed and inmates can be handcuffed before leaving the cell.

trouble breathing, 57-1 at 60:13-21. Mr. McCloud testifies that Sgt. Vanschoyck never offered to give him a decontamination shower. Dkt. 57-1 at 54:15-19.[2] Sgt. Vanschoyck told other officers that McCloud refused a decontamination shower. Dkt. 57-1 at 60:22-61:1.

After Sgt. Vanschoyck deployed the spray, Nurse Knepp, Officer Pickett, and Sgt. Vanschoyck went to Mr. McCloud's cell. *Id.* at 24:14–19, 51:1-8. Mr. McCloud states that he and Mr. Cox requested showers. Dkt. 69 ¶ 11; Dkt. 57-1 at 51:1-24, 60:13–61. He maintains that he told the officers and Nurse Knepp that his lungs were hurting. Dkt. 69 ¶ 12; Dkt. 57-1 at 14:21–15:2.[3] Despite Mr. McCloud's requests, he was not allowed to shower. *Id.* at 54:15-19.

More than an hour went by with Mr. Cox and Mr. McCloud not being able to shower to wash off the OC. Dkt. 69 ¶¶ 13–14; Dkt. 57-1 at 56:1-10. Mr. McCloud and Mr. Cox attempted to communicate with people outside of the prison on his tablet and called officers on a cell intercom. Dkt. 57-1 at 56:1–58:18. He reached Officer Holt on the intercom and told him he had that "mace all over him," could not breathe, and needed a shower, but his request was refused because Officer Holt told him that he had previously refused a decontamination shower. *Id.* at 58:12-18, 60:13–61:1. Mr. McCloud and Mr. Cox attempted to communicate with the staff walking by their cell. *Id.* at 64:11-20.

---

[2] This testimony from Mr. McCloud is inconsistent with Sgt. Vanschoyck's incident report. Dkt. 52-5.

[3] Nurse Knepp's affidavit contests Mr. McCloud's account. She states that Mr. McCloud refused to allow her to take his vital signs and did not voice any complaints or appear to be in distress. Dkt. 52-2 ¶ 9 (Knepp Aff.). She further states that she did not have the authority to order a decontamination shower. *Id.* ¶ 11.

4

Believing they were being deliberately ignored, Mr. Cox flooded the cell and smashed the cell door window to get the attention of higher-ranking officers. Dkt. 57-1 at 64:21–65:8; 67:8-12. By the time Sgts. Barlow and Vanschoyck responded, Mr. McCloud and Mr. Cox had been in the contaminated cell for about three hours. *Id.* at 52:19-20.

Sgts. Barlow and Vanschoyck escorted Mr. McCloud and Mr. Cox away from the cell to the segregated housing unit ("SHU"). *Id.* at 69:16-17. Mr. McCloud was placed in the SHU because the cell window could not be fixed for a couple days. *Id.* at 67:19-24.

Nurse Calvillo-Perez checked in with Mr. McCloud after he was transferred to the SHU. Dkt. 52-3 ¶ 8 (Calvillo-Perez Aff.); 57-1 at 15:12-22. Mr. McCloud told the Nurse that he wanted a shower and that his lungs were hurting. 57-1 at 15:12-22; Dkt. 69 ¶ 16. Nurse Calvillo-Perez did not have the authority to order a shower for Mr. McCloud, but she informed a sergeant of Mr. McCloud's request. Dkt. 52-3 ¶ 8; dkt. 57-1 at 15:12-22, 30:18-19 ("she told them to give me the shower....").

Then, Officer Donovan took Mr. McCloud to a strip cell on Defendant Lt. Nicholson's orders. *Id.* at 52:22-24. Mr. McCloud asked Officer Donovan for a decontamination shower as well. Officer Donovan was going to provide Mr. McCloud with a shower, but Lt. Nicholson ordered him not to because Sgt. Vanschoyck told Lt. Nicholson that Mr. McCloud initially refused the decontamination shower. *Id.* at 71:22–72:22, 75:4–76:1. *See also* Dkt. 69 ¶ 16.

5

Later that day, Mr. McCloud asked Sgt. Hall for a shower, and Sgt. Hall refused. Dkt. 69 ¶ 17. He was held in a strip cell in only his underwear for about three days. Dkt. 57-1 at 76:11-13; 78:3-5. He repeated his requests for a decontamination to each shift during his placement in the SHU and was refused, despite Mr. McCloud telling the officers that he had OC spray on him. *Id.* at 79:8–80:7.

Officers not named as defendants in this case took Mr. McCloud to shower days after the incident, which alleviated some of Mr. McCloud's discomfort, but he continued to feel the effects of the OC spray for "couple of weeks" after the incident, given the delay. Dkt. 57-1 at 81:1–82:3. Mr. McCloud also had trouble exercising due to lung pain, difficulty breathing, and a feeling of tightness in his lungs. *Id.* at 26:15-25, 28:18–29:1, 94:22– 95:7.

### III.
### Discussion

After screening Mr. McCloud's complaint, the Court allowed the following claims to proceed under the Eighth Amendment:

- Excessive force claim against defendant Sgt. Vanschoyck and failure to protect claims against defendants Officers Pickett and Holt based on Sgt. Vanschoyck's use of the OC Spray;

- Deliberate indifference claims against defendants Sgt. Vanschoyck, Barlow, and Hall, Officers Pickett, Holt, and Donovan, Lt. Nicholson,

- and Nurses Knepp, and Calvillo-Perez for refusing Mr. McCloud a shower after the use of OC spray;

- Conditions of confinement claim against Lt. Nicholson for leaving Mr. McCloud in a strip cell for three days.

Dkt. 8 at 2–3. (Order Screening Complaint and Directing Further Proceedings).

### A. Sgt. Vanschoyck's use of OC Spray

Mr. McCloud claims that Sgt. Vanschoyck used excessive force when he sprayed OC into the cell and that Officers Pickett and Holt failed to intervene. These defendants argue that they are entitled to summary judgment because the use of the OC spray was necessary to restore order when Mr. Cox refused to close the cuff port.

Correctional officers violate the Eighth Amendment when they use force "not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (cleaned up). The ultimate determination of the intent of the person applying the force in an excessive force claim involving prison security measures depends on a number of factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmate, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Specifically, OC spray "can be used in limited quantities when reasonably necessary to subdue or maintain control over an inmate," and

7

"violates the Eighth Amendment only if it is used 'in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.'" *See Musgrove v. Detella*, 74 F. App'x 641, 646 (7th Cir. 2003). In addition, "failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison officials to a prisoner's welfare 'effectively condones the attack by allowing it to happen.'" *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Lewis v. Richards,* 107 F.3d 549, 553 (7th Cir. 1997)).

Citing *Soto v. Dickey,* 744 F.2d 1260, 1270 (7th Cir. 1984), Sgt. Vanschoyck argues that pepper spray may be used to subdue an inmate who is confined in a locked cell. But in *Soto,* the court explained that "the 'use of the substance (tear gas) in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required.'" *Id.* (quoting *Spain v. Procunier,* 600 F.2d 189, 195 (9th Cir. 1979)). In other words, whether the use of OC on an inmate who is confined in a locked cell constitutes excessive force depends on the facts. Here, a jury could believe Mr. McCloud's testimony that Sgt. Vanschoyck gave no warning before he deployed the OC spray. And if so, the jury could reasonably find that the use of OC spray was excessive force. *Lewis v. Downey,* 581 F.3d 467, 479 (7th Cir. 2009) (force "including mace and tear gas … should generally follow adequate warnings"); *see Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (force "without penological justification" is excessive). Additionally, Mr. McCloud's affidavit casts doubt on

8

whether Mr. Cox continually had his hands in the cuff port throughout this incident. Dkt. 69 ¶ 8 ("Had Cox been standing with his hands in the cup port, VanSchoyck would not have been able to spray me being 10 feet away and on the top bunk.") Accordingly, Sgt. Vanschoyck is not entitled to summary judgment on Mr. McCloud's excessive force claim.

Officers Pickett and Holt, on the other hand, are entitled to summary judgment. Construing the facts in a light most favorable to Mr. McCloud, Sgt. Vanschoyck gave no warning before he used the OC. Dkt. 69 ¶ 5. So, even if Officers Pickett and Holt were present when that occurred,[4] there is no evidence that they had the opportunity to react to stop Sgt. Vanschoyck from deploying the spray. Therefore, they are entitled to summary judgment on Mr. McCloud's failure to protect claim. *See Coleman v. Nicholson*, No. 2:19-CV-00462-JRS-MJD, 2019 WL 6131250, at *2 (S.D. Ind. Nov. 18, 2019) (dismissing failure to protect claim for failing to intervene with fellow officer deployed pepper spray without warning).

**B. Decontamination shower**

The defendants seek summary judgment on Mr. McCloud's claim that he was denied a decontamination shower. Defendants Hall and Barlow argue that they were not personally involved in the alleged denial. Defendants Holt, Donovan, Barlow, Hall, and Nicholson all argue that they are entitled to qualified immunity because there is not a clearly established right to an *additional* decontamination shower beyond an initial shower following exposure to OC

---

[4] Mr. McCloud testified that only Sgt. Vanschoyck was present. Dkt. 57-1 at 48:2-11.

spray. Finally, the defendants argue that Mr. McCloud did not suffer from an objectively serious medical condition.

### 1. Personal involvement

Defendants Hall and Barlow argue that they were not personally involved in denying Mr. McCloud a decontamination shower. "Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).

Mr. McCloud testified that, after he was moved to the SHU, he asked Sgt. Hall for a decontamination shower and was refused. Dkt. 69 ¶ 17. Thus, there is at least a dispute of fact regarding whether Sgt. Hall was aware of Mr. McCloud's request for a shower and denied it. Sgt. Hall is therefore not entitled to summary judgment based lack of personal involvement.

On the other hand, Mr. McCloud testified that, while Sgt. Barlow transported him to the SHU, they did not have any conversations. Dkt. 57-1 at 70:15-17. And there is no other evidence of any other interaction between Mr. McCloud and Sgt. Barlow. There is therefore no evidence that Sgt. Barlow was aware of Mr. McCloud's request for a shower and denied it. Accordingly,

Sgt. Barlow is entitled to summary judgment based on his lack of personal involvement.

### 2. Qualified Immunity

Defendants Holt, Hall, Donovan, and Nicholson argue that they are entitled to qualified immunity because they believed Mr. McCloud initially refused a decontamination shower. Dkt. 58 at 5.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly.* 137 S.Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). To make a qualified immunity determination, the Court must "(1) determine whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) if so, determine whether that right was clearly established at the time of the alleged violation." *Sparing v. Village of Olympia Fields,* 266 F.3d 685, 688 (7th Cir. 2001) (*citing Saucier v. Katz,* 533 U.S. 194 (2001) (citations omitted)). Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Sparing,* 266 F.3d at 688 (*citing Spiegel v. Cortese,* 196 F. 3d 717 (7th Cir. 1999)). "Precedent tied to particularized facts can indicate that law is clearly established, but the Supreme Court does 'not require a case directly on point.'" *Thompson v. Cope,* 900 F.3d 414, 422 (7th Cir. 2018) (citing *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). *See also Abbott v. Sangamon Cnty., Ill.,* 705 F.3d 706, 732 (7th Cir. 2013) ("[J]ust as defining a right too broadly may defeat the purpose of qualified immunity, defining a right too narrowly may defeat the purpose of § 1983").

11

"[D]etaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering". *Kervin v. Barnes*, 144 Fed. Appx. 551, 552 (7th Cir. 2005). *See also McNeeley v. Wilson*, 649 F. App'x 717, 723 (11th Cir. 2016) (Defendants were "on notice that delaying a proper decontamination for over twenty minutes despite complaints about the effects of pepper spray could result in a clearly established constitutional violation."); *Clement v. Gomez*, 298 F.3d 898, 905–06 (9th Cir. 2002).[5] Mr. McCloud therefore had a clearly established right to be able to rinse off the OC spray that was causing him pain. *Kervin*, 144 Fed. Appx. at 552; *Sparing*, 266 F.3d at 688. Defendants argue that "no clearly established authority grants Plaintiff a right to shower *after refusing a decontamination shower*." Dkt. 58 at 4–5 (emphasis added). But that distinction—the initial refusal of a shower—defines Mr. McCloud's rights "too narrowly" and "defeat[s] the purpose of § 1983". *Abbott*, 705 F.3d at 732.

Mr. McCloud was exposed to OC spray in his cell and thereafter not allowed access to a shower for three days, despite his repeated requests. Even if the Defendants were told and reasonably believed that Mr. McCloud had refused a shower, there is designated evidence that Mr. McCloud:

---

[5] While Mr. McCloud's motion did not point to this case law, given Mr. McCloud's pro se status, the Court itself identified this legal authority. *Cf. Stone v. Couch*, No. 119CV01193TWPDML, 2021 WL 4247870, at *5 (S.D. Ind. Sept. 17, 2021) ("Given Mr. Stone's pro se status, the Court reviewed whether such authority exists, but it has found no such support that meets this burden.").

- Used the cell intercom to tell Officer Holt that he "had mace all over [him]", he couldn't breathe, and he needed a shower. *See* Dkt. 57-1 at 56:1–60:21.

- Asked Sgt. Hall for a shower once at SHU, and was denied, despite Sgt. Hall "see[ing] that [Mr. McCloud] had mace all over [him]" and "was going through it" and despite Mr. McCloud telling Sgt. Hall that he had OC spray on him.  Dkt. 57-1 at 79:8–80:7; Dkt. 69 ¶ 17.

- Asked Officer Donovan for a shower for decontamination and told Officer Donovan that his lungs were burning.  Dkt. 57-1 at 71:22–72:5, Dkt. 69 ¶ 17.  Officer Donovan told Mr. McCloud that Lt. Nicholson overrode Officer Donovan's plan to give Mr. McCloud a shower.  Dkt. 57-1 at 71:22–72:22.  Officer Donovan told Mr. McCloud that Lt. Nicholson refused to allow Mr. McCloud to shower because Sgt. Vanschoyck had told Lt. Nicholson that Mr. McCloud had initially refused the shower. Dkt. 57-1 at 71:22–72:22, 75:4–76:2.

A jury could therefore find that Defendants Holt, Donovan, Hall, and Nicholson each refused to allow Mr. McCloud to rinse off the OC spray despite knowing that Mr. McCloud had (1) been exposed to OC spray, (2) not rinsed it off and (3) asked each of these defendants for a shower.  These denials left Mr. McCloud without a decontamination shower for three days.[6]  The Defendants are not entitled to qualified immunity.

---

[6] This undisputed fact—that Mr. McCloud went with no decontamination shower for three days despite requesting it—is a critical difference between *Stone v. Couch*, No. 1:19-CV-01193-TWP-DML, 2021 WL 4247870, at *5 (S.D. Ind. Sept. 17, 2021), a case cited in the government's brief, and this case. Unlike *Stone*, where a district court

13

### 3. Deliberate Indifference

Officers Holt, Pickett, and Donovan, Sgt. Hall, Nurses Knepp and Calvillo–Perez, and Lt. Nicholson argue that they are entitled to summary judgment because Mr. McCloud's exposure to the OC spray did not create an objectively serious medical condition and because they were not subjectively aware of any potential harm to him.

The Eighth Amendment protects Mr. McCloud from the Defendants' conscious disregard of his serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (en banc). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661–62 (7th Cir. 2016) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state a viable claim, the plaintiff must show: (1) that the prisoner suffered from an objectively serious medical condition and (2) the defendants were deliberately indifferent to that condition. *Donald v. Wexford Health Sources*, 982 F.3d 451, 458 (7th Cir. 2020).

#### a. Objectively Serious Condition

First, Officers Holt, Pickett, and Donovan, Sgt. Hall, and Lt. Nicholson argue that being sprayed with OC spray does not create an objectively serious condition. Exposure to OC spray may result in a serious medical condition that

---

found that the government had qualified immunity when prison officials denied a *second* shower to the defendant, *id.* at *5, Mr. McCloud never received a shower despite requesting one from Defendants Holt, Hall, Donovan, and Nicholson.

14

implicates the Eighth Amendment; it is a fact-intensive inquiry. *Hughes v. Durrent*, 2017 WL 3978702 at *9-*12 (N.D. Ill. 2017) (collecting and discussing cases); *Buchanan v. Pfister*, No. 17-cv-8075, 2018 WL 4699778, at *7 (N.D. Ill. Oct. 1, 2018) (holding that "the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions" and collecting cases). Defendants point to *Pearson v. Wiley*, No. 1:18-CV-03045-JRS-DML, 2020 WL 360519, at *3 (S.D. Ind. Jan. 22, 2020), to support their position, but there, the court was evaluating the plaintiff's, rather than the defendants', motion for summary judgment. Furthermore, in denying plaintiff's motion, the court explained that "there is no evidence as to how long the effects of the chemical spray lasted" and "within a couple hours of being sprayed, he wanted to shower but she noted no serious injury and no signs of distress." *Id.*[7]

Here, Mr. McCloud has designated evidence that he was left in the cell for hours after being sprayed with OC and that he reported to officers and medical staff that he was in distress from the OC spray. Dkt. 69 ¶ 11, 17; 57-1 at 58:12-18, 60:15–61:1 (informing Officer Holt via cell intercom that he had that "mace all over him," could not breathe, and needed a shower). Mr. McCloud has also designated evidence that he experienced a visible reaction to the OC spray, dkt. 57-1 at 45:19–46:2, 61:6–11 (eyes teared, nose ran), 79:8–80:7 ("They seen that I had mace all over me. They seen that I was burning. They seen I was going

---

[7] They also rely in part on *Henderson v. Sheahan*, 196 F.3d 839 (7th Cir. 1999), but that case involved a claim of exposure to second-hand smoke, not pepper spray.

15

through it."), and he told officers that he had OC spray on him, dkt. 57-1 at 79:8–80:7. Moreover, the Seventh Circuit has held that refusal to allow an inmate to flush out his eyes after being sprayed may amount to a constitutional violation under the Eighth Amendment. *See Kervin,* 144 F. App'x. at 552 ("detaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering.").

Since Mr. McCloud has presented evidence that exposure to OC spray caused him to experience pain and suffering and was not given access to a shower to rinse off for days, a jury could reasonably find that Mr. McCloud experienced an objectively serious condition. The defendants are therefore not entitled to summary judgment on this ground.

### b. Deliberate Indifference

Officers Holt, Pickett, and Donovan, Sgt. Hall, Lt. Nicholson, and Nurses Knepp, and Calvillo-Perez next argue that they are entitled to summary judgment because they were not aware of any risk to Mr. McCloud.[8] They argue that Sgt. Vanschoyck told them that Mr. McCloud had refused a shower earlier. Dkt. 58 at 12. But even if Mr. McCloud initially refused a shower, that is not dispositive to determining whether Defendants were deliberately indifferent. From the designated evidence here, a jury could still reasonably find that Officers Holt and Donovan, Lt. Nicholson, and Nurses Knepp knew that Mr. McCloud was in

---

[8] Sgt. Vanschoyck does not argue that he was not aware of Mr. McCloud's request for a shower. Nor could he for purposes of summary judgment. Because Mr. McCloud attests that Sgt. Vanschoyck refused his shower requests, there is at least a dispute of fact on this point.

distress from the OC spray yet refused to let him rinse it off. Dkt. 57-1 at 14:21-15:2; dkt. 69 ¶ 16-17.

First, when Nurse Knepp evaluated Mr. McCloud shortly after the incident, he told her that he was in distress and needed a shower. Dkt. 69 ¶ 12.[9] He also states that Nurse Knepp, Sgt. Vanschoyck, and Officer Pickett left the area without providing Mr. McCloud any decontamination procedures. *Id.* Further, Mr. McCloud testified that he called several times on the intercom stating "I got mace all over me. I can't breathe. I need a shower. My cell's got mace all in it." Dkt. 57-1 at 60:15-16. And he states that he spoke to Officer Holt on the intercom asking for a shower. Dkt. 57-1 at 58. Nonetheless, Mr. McCloud was left in the cell for about three hours after the OC was sprayed into their cell. Dkt. 57-1 at 52:19-20.

Mr. McCloud further testified that he asked for a shower after he was removed from his cell and again after he was placed in the SHU. Dkt. 69 ¶ 17; *see also* dkt. 52-3 ¶ 8. He testified specifically that Lt. Nicholson denied his request for a shower. Dkt. 57-1 at 72:3-5 ("Officer Donovan he was – he was going to give me a shower, but Lieutenant Nicholson and them wouldn't let them give me one."). He also asked Sgt. Hall for a shower later that day, and Sgt. Hall refused. Dkt. 69 ¶ 17.

In sum, from the designated evidence a jury could reasonably conclude that Officer Holt, Sgt. Hall, Lt. Nicholson, and Nurse Knepp were aware that Mr.

---

[9] Nurse Knepp's affidavit contests Mr. McCloud's affidavit, but this factual dispute further underscores why summary judgment for the defendants would be inappropriate for this claim. *Anderson,* 477 U.S. at 248.

McCloud was in distress and needed to rinse off the OC spray. Accordingly, they are not entitled to summary judgment on the ground that they were not aware of a risk to him.

On the other hand, Mr. McCloud testified that Nurse Calvillo-Perez and Officer Donovan did request that he be provided a shower, but correctional staff denied it. Dkt. 57-1 at 15:19:-22 ("she told the COs then to give me a shower"); 30:18-19; 71:22–72:22 ("Officer Donovan. . . he was going to give me a shower, but Lieutenant Nicholson and them wouldn't let him give me one."); 75:4–76:1; Dkt. 69 ¶ 16. *See also* Dkt. 52-3 ¶ 8 (explaining that Ms. Calvillo-Perez lacked the authority to order a shower but informed the Sergeant of Mr. McCloud's unit of Mr. McCloud's request to shower). Based on these undisputed facts, Nurse Calvillo-Perez and Officer Donovan are entitled to summary judgment.

### C. Strip Cell

Finally, Lt. Nicholson seeks summary judgment on Mr. McCloud's claim that Lt. Nicholson left him in a strip cell for three days in only his underwear.

The Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832; *see also Johnson v. Pelker*, 891 F.2d 136, 138-139 (7th Cir. 1989) (no constitutional violation when an inmate in segregation was denied access to dry bedding and dry clothing after being doused with water). Here, Mr. McCloud does not allege that the cell was excessively cold or dirty, or that there he was subjected to other harsh conditions of confinement. So, the designated evidence here—only

18

showing that Mr. McCloud was left in a strip cell for three days with no other evidence of harsh conditions—is insufficient to support a conditions of confinement claim. *See Freeman v. Miller*, 615 F. App'x 72, 79 (3d Cir. 2015) (no Eighth Amendment violation when prisoner was kept in a chilly (but not less than 40 degree) cell for seven days with only underwear); *Johnson v. Lappin*, 264 F. App'x 520, 523 (7th Cir. 2008) (six days with only underwear in frigid cell states a claim for Eighth Amendment violation).

Further, other than his claims that he was denied a decontamination shower, which have been discussed above, and will proceed, he does not allege that he was denied water or other of life's necessities. Accordingly, Lt. Nicholson is entitled to summary judgment on Mr. McCloud's claims that he was placed in a strip cell.

## IV.
## Conclusion

The motion for summary judgment filed by the correctional defendants, dkt. [56], is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the deliberate indifference claim against Sgt. Barlow and Officer Donovan, the failure to protect claims against Officers Pickett and Holt, and the conditions of confinement claim against Lt. Nicholson. It is otherwise **DENIED**.

The motion for summary judgment filed by the nursing defendants, dkt. [50], is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the deliberate indifference claim against Nurse Calvillo-Perez and **DENIED** as to the deliberate indifference claim against Nurse Knepp.

19

The following claims shall proceed:

- Excessive force claim against Sgt. Vanschoyck based on his use of the OC Spray; and

- Deliberate indifference claim against Sgts. Vanschoyck and Hall, Officers Pickett and Holt, Lt. Nicholson, and Nurse Knepp for refusing Mr. McCloud a shower after the use of OC spray.

The **clerk shall terminate defendants** Barlow, Calvillo-Perez and Donovan as defendants on the docket.

The **clerk shall correct** Sgt. Vanschoyck's name on the docket from Sgt. Vanshoyck to Sgt. Vanschoyck.

The Court will set further proceedings, including a settlement conference and trial if one is necessary, separately. If Mr. McCloud wishes to request that the Court recruit counsel to represent him for these proceedings, he must file a motion on the Court's form. The **clerk shall include** a form motion for assistance with recruiting counsel with his copy of this Order. Mr. McCloud should fill out the form and submit it to the Court by **February 16, 2024.**

**SO ORDERED.**

Date: 1/19/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JEFFERY MCCLOUD
120679
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All Electronically Registered Counsel